**In re Ramon SANCHEZ, a civil contemnor before the Grand Jury.**

No. M–11–188.

United States District Court, S.D. New York.

Nov. 16, 1983.

Amended Dec. 27, 1983.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., Michael Tabak, Asst. U.S. Atty., New York City, for the U.S.

Richard Levitt, New York City, for Ramon Sanchez.

OPINION

SAND, District Judge.

This matter * arose on an application by the United States for an order permitting the forcefeeding of Ramon Sanchez, a civil contemnor currently incarcerated at the Metropolitan Correctional Center ("MCC"). Mr. Sanchez was originally found in contempt by the Honorable David N. Edelstein of this Court approximately thirteen months ago for failure to testify before a grand jury.

Approximately eighteen days prior to the commencement of this proceeding, Mr. Sanchez began a hunger strike. According to his attorney, this action was intended to demonstrate the sincerity of his position that his continued imprisonment would have no effect upon his unwillingness to testify, and therefore that the purposes of imposing civil contempt were no longer being served in his case. In addition, as a secondary and subordinate ground, the hunger strike was said to be intended as a protest on behalf of other civil contemnors at the MCC.

Bureau of Prisons regulations 28 C.F.R. 549.60–.66 govern the treatment of prisoners engaging in hunger strikes. These regulations provide for "forced medical treatment" of an inmate if "a medical officer determines that the inmate's life or permanent health will be threatened if treatment is not initiated immediately." [1] 28 C.F.R. 549.65(a).

Dr. Robert McNerney, a physician at the MCC who had examined Mr. Sanchez, stated to the Court that Mr. Sanchez was in immediate danger of suffering permanent bodily damage as a result of complications arising from malnutrition and dehydration.

Although acknowledging that Mr. Sanchez was still mentally lucid, Dr. McNerney believed there existed a substantial possibility that he could become comatose if not fed within the next two days. Although Mr. Sanchez was in the process of bringing a motion for his release before Judge Edelstein (the disposition of which might have rendered this proceeding moot), it became clear upon communication by this Court and by the parties with the chambers of Judge Edelstein that this motion would not be decided within the next two days.[2] Thus, this Court was left with no alternative but to address the merits of the Government's application.

The question of force-feeding under any circumstances and in particular under the Bureau of Prisons regulations invoked by the Government in this case, raises serious constitutional questions regarding an individual's right to control his own body and the validity of a hunger strike as an exercise of first amendment rights as an expression of views. Although prisoners do not enjoy the same degree of constitutional protection as unincarcerated persons, the ambit of this principle is not clear in this type of proceeding. The withdrawal or limitation of prisoner's rights in other circumstances has been justified "in light of the central objective of prison administration, safeguarding institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979). However, a prisoner on a hunger strike, weakened to the point of physical incapacity, does not present a threat to prison security, although, of course, the extra medical atten-

* This opinion was initially rendered in open court on November 16, 1983 and has undergone some minor editing and revision.

1. The regulations contain various provisions regarding the medical monitoring and treatment of hunger strikers. 28 C.F.R. 549.62–.64. In addition, prior to the commencement of "forced medical treatment", the prison staff "shall make reasonable efforts to convince the inmate to voluntarily accept treatment." 28 C.F.R. 549.-65(b). At oral argument, the Assistant United States Attorney represented, and Mr. Sanchez's attorney did not contest, that the procedures

prescribed by these regulations had been followed in this case.

2. Judge Edelstein's chambers at first advised that no such motion was pending. The parties were thereupon directed by this Court to report to Judge Edelstein's chambers. Upon their return, they reported that the motion, the latest in a series of such motions, had been filed earlier that day without an accompanying memorandum of law and that Judge Edelstein had denied the motion without prejudice to renewal together with the memorandum required by the Court's rules.

tion that such an individual may require creates an administrative burden.[3] However, this later concern hardly merits the same judicial solicitude as the prevention of escape, riots, or other mayhem.

Nevertheless, under the special circumstances of this case, the Government's application must be granted. Mr. Sanchez is not on a hunger strike as a means of demonstrating on behalf of some political cause or religious belief. His counsel's reference to protesting conditions of civil contemnors was a mere makeweight. Nor is his situation analogous to a patient refusing life-prolonging treatment. Rather, Sanchez is, by his own admission, attempting to bring maximum pressure to bear upon the Judge who will ultimately rule upon his motion to vacate the contempt order. Moreover, the prolongation of this hunger strike will soon render Mr. Sanchez physically or mentally incapable of testifying before the grand jury, thereby rendering further coercive sanctions futile. In one sense, therefore, Mr. Sanchez is attempting to escape from prison and to frustrate the lawful authority of the courts. This is a purpose that we cannot condone. Further, to the extent that the hunger strike was intended to be a measure of the contemnor's sincerity, the point had already been made. The extent to which it has any relevance is a matter for Judge Edelstein to determine.

Accordingly, for the reasons stated, the Government's application is granted.

SO ORDERED.

---

**3.** See 28 C.F.R. 549.62–.64, which outline the medical procedures for dealing with prisoners on hunger strikes.