907 F.2d 1328
 Danuta Imiolek FILUS, as Administratrix of the Estate of
Kazimierz Jan Filus, deceased, Plaintiff-Appellant,
and
Danuta Imiolek Filus, as Administratrix of the Estate of
Joanna Marianna Filus, deceased, Plaintiff-Appellant,
v.
LOT POLISH AIRLINES, a/k/a Polskie Line Lotnicze, Defendant,
Union of Soviet Socialist Republics, by its Ministry of
Civil Aviation, Ilyushin Design Bureau and
Soloviev Design Bureau, Defendant-Appellee.
 No. 600, Docket 89-7729.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 5, 1989.
Decided June 29, 1990.
 
 1
 Lori B. Lasson, New York City (Kreindler & Kreindler, New York City, Milton G. Sincoff, of counsel), for plaintiff-appellant.
 
 
 2
 John Mage, New York City (Wolf Popper Ross Wolf & Jones, New York City), for defendant-appellee.
 
 
 3
 Before KEARSE and WINTER, Circuit Judges and HAIGHT, District Judge.*
 
 HAIGHT, District Judge:
 
 4
 Following an air crash near Warsaw, Poland in May 1987, plaintiff-appellant administratrix brought this action against LOT Polish Airlines, which owned and operated the aircraft, and against the Union of Soviet Socialist Republics (USSR), allegedly acting by designated agencies or instrumentalities. Plaintiff charged those entities with the negligent design, manufacture, assembly, inspection and servicing of the aircraft and its engines. This appeal, involving only the USSR, is from the district court's order dismissing the complaint against the defendant on the ground of sovereign immunity from suit. We are required to consider the application of the Foreign Sovereign Immunities Act to the facts alleged in this complaint; the sufficiency of service of process; and the adequacy of the record below for the order of dismissal. The district court's opinion is reported. In Re Aircrash Disaster Near Warsaw, Poland, 716 F.Supp. 84 (E.D.N.Y.1989).
 
 
 5
 We reverse and remand for further proceedings.
 
 Background
 
 6
 Plaintiff-appellant Danuta Imiolek Filus is the administratrix of the estates of her late husband Kazimierz Jan Filus and her late daughter Joanna Marianna Filus. They were killed, together with all others on board, when on May 9, 1987 a LOT jet aircraft crashed shortly after takeoff from Warsaw on a flight to New York City. Plaintiff's decedents had purchased round trip passenger tickets from LOT in the United States. The crash occurred on the return leg of their journey.
 
 
 7
 The Ilyushin 62-M aircraft involved in the disaster was built in the USSR and sold to LOT. Plaintiff alleges that two of the aircraft's engines failed, causing a fire which led to the crash. The complaint further alleges LOT was negligent and committed willful misconduct in the operation, maintenance, and repair of the engines.
 
 
 8
 The complaint also asserts claims against the Union of Soviet Socialist Republics, "by its Ministry of Civil Aviation, Ilyushin Design Bureau and Soloviev Design Bureau." Throughout her complaint plaintiff refers to these entities collectively as "the Soviet defendant." The complaint alleges that prior to May 9, 1987 "the Soviet defendant, by its Ministry and Ilyushin Bureau, designed, manufactured, assembled, sold, inspected, overhauled and serviced the subject aircraft." p 7. The complaint also alleges that prior to May 9, 1987 "the Soviet defendant, by its Ministry and Soloviev Bureau," engaged in the same activities with respect to "the four engines installed in the subject aircraft." p 8. The complaint alleges that prior to May 9, 1987 "the Soviet defendant, by its Ministry, Soloviev Bureau and Ilyushin Bureau, sold to defendant LOT the subject aircraft" along with operating, servicing and overhauling manuals and instructions. p 9. The complaint further alleges that at the pertinent times the Soviet defendant was engaged in substantial commercial activities in the United States and New York, including the servicing of said Ilyushin aircraft and engines, the maintenance of a business office and the advertising of said aircraft and engines." p 10.
 
 
 9
 The complaint further alleges "the Soviet defendant, by its Ministry, Soloviev Bureau and Ilyushin Bureau, negligently designed, manufactured, assembled, sold, inspected, overhauled and serviced the subject aircraft and its engines" and also negligently failed to "warn and inform defendant LOT and the plaintiff's decedent [sic] that the subject aircraft and its engines were defective and unairworthy." p 14.
 
 
 10
 Plaintiff asserts subject matter jurisdiction over the USSR and these designated entities under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. Secs. 1330, 1602-1611 (1988), which gives federal district courts jurisdiction of civil actions against "a foreign state" including "an agency or instrumentality" thereof as defined in Sec. 1603(b)[1] "as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity" under Secs. 1605-1607 or under an international agreement. Section 1604 renders a foreign state immune from the jurisdiction of federal or state courts "except as provided in sections 1605 to 1607 of this chapter." The exceptions from immunity plaintiff relies upon are found in Sec. 1605(a)(2), which sets out two categories of commercial activity, i.e., (1) commercial activity carried on in the United States, and (2) an act performed in the United States in connection with commercial activity elsewhere,[2] either of which could eliminate the foreign state's immunity. Plaintiff attempted service of process upon the USSR under Secs. 1608(a)(3) and (a)(4).[3] Thereafter she moved for entry of a default judgment, contending that the USSR had failed to answer or otherwise move within the sixty days required by Sec. 1608(d). That motion for default prompted an appearance by New York counsel "for defendant Union of Soviet Socialist Republics, by its Ministry of Civil Aviation." Joint Appendix at 117. The USSR and the Ministry moved for an order of dismissal under Fed.R.Civ.P. 12(b)(1) and (2) on the grounds that the district court lacked both personal and subject matter jurisdiction, and pursuant to Rule 12(b)(4) and (5) for lack of lawful service of process. Counsel for the USSR and its Ministry of Civil Aviation did not undertake to appear for the Ilyushin or Soloviev Design Bureaus.
 
 
 11
 The USSR and the Ministry challenged subject matter jurisdiction under the FSIA on two alternative bases. First, they contended that neither the USSR nor the Ministry manufactured, serviced or sold the aircraft in question. An affidavit to that effect was submitted by Vladimir A. Kuleshov, Counsel-General of the USSR Embassy to the United States. The Kuleshov affidavit states that commercial aircraft are manufactured and sold in the USSR by organizations that are "juridical persons distinct and separate from the State and its Ministries" which have "separate property of their own, can in their own name acquire property and non-property rights, incur obligations, and sue and be sued in courts or in arbitration." Joint Appendix at 121. The USSR specifically challenged plaintiff's lumping the State, Ministry, and the two Design Bureaus together as one "Soviet defendant" and treating them all as a "foreign state" subject to the provisions of the FSIA.
 
 
 12
 Second, the USSR argued to the district court that an insufficient nexus existed between any commercial activity in the United States of any of the entities referred to in the complaint and appellant's cause of action, so that Sec. 1605(a)(2) of the FSIA was not satisfied.
 
 
 13
 On the question of insufficiency of process and its service, the USSR and the Ministry relied upon an agreement between the USSR and the United States on the service of judicial documents reflected by an exchange of diplomatic notes in November 1935. See Execution of Letters Rogatory, Nov. 22, 1935, United States--Union of Soviet Socialist Republics, E.A.S. No. 83. (Joint Appendix at 123-131). The USSR argued to the district court that service of plaintiff's summons and complaint in the territory of the USSR was not done in accordance with that procedure and that the Soviet Union had agreed to no other procedure.
 
 
 14
 Plaintiff responded to the USSR's jurisdictional motion by propounding eleven interrogatories regarding jurisdiction. The interrogatories identified the "subject aircraft" as "the LOT Polish Airlines' Ilyushin 62-M aircraft" which crashed, and the "subject engines" as the Soloviev D-30KU turbofan engines installed on board that aircraft. Interrogatory 8 inquired:
 
 8. With regard to the subject engines
 
 15
 (a) who designed them and when?
 
 
 16
 (b) who manufactured them and when?
 
 
 17
 (c) who assembled them and when?
 
 
 18
 (d) who sold them to LOT or any other Polish entity or association and when?
 
 
 19
 (e) who inspected them before the sale to LOT or any other Polish entity or association and when?
 
 
 20
 (f) who overhauled them and when?
 
 
 21
 (g) who serviced them and when?
 
 
 22
 (h) who issued airworthiness certificates or their equivalent and when?
 
 Interrogatory 9 inquired:
 9. With regard to the subject aircraft
 
 23
 (a) who designed it and when?
 
 
 24
 (b) who manufactured it and when?
 
 
 25
 (c) who assembled it and when?
 
 
 26
 (d) who sold it to LOT or any other Polish entity or association and when?
 
 
 27
 (e) who inspected it before the sale to LOT or any other Polish entity or association and when?
 
 
 28
 (f) who overhauled it and when?
 
 
 29
 (g) who serviced it and when?
 
 
 30
 (h) who issued airworthiness certificates or their equivalent and when?
 
 
 31
 The interrogatories indicated that a question as to "who" had performed a given act called not only for the person's name but also for his or her address.
 
 
 32
 The USSR objected to each of the interrogatories on the ground that it had moved to dismiss the complaint because of immunity from suit under the FSIA and should not be required to submit to discovery on the merits while that motion was pending. Magistrate Caden, to whom the matter was referred, directed the USSR to answer plaintiff's interrogatories. The USSR objected to the magistrate's order. Its objections became consolidated with the motion to dismiss before the district court.
 
 
 33
 Judge Nickerson assumed without deciding that "the Soviet defendant and its instrumentalities constitute a 'foreign state' as defined in 28 U.S.C. Sec. 1603." 716 F.Supp. at 85. He then proceeded to consider the application of Sec. 1605(a)(2). He concluded that the first clause of section 1605(a)(2) did not apply because plaintiff's action was not based upon "a commercial activity carried on in the United States by the foreign state," 28 U.S.C. Sec. 1605(a)(2), reasoning that plaintiff's cause of action did not derive from the following activity relied upon by plaintiff: regular flights of the Soviet airline Aeroflot to and from Moscow and the United States, Aeroflot's maintenance of an office in New York, and an advertisement in the Wall Street Journal by Aviaexport USSR offering to supply aircraft and engines and to service and repair them. 716 F.Supp. at 86.
 
 
 34
 Plaintiff also argued that her action fell within the second clause of Sec. 1605(a)(2), an action based "upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere." In that regard, plaintiff contended that the "act" performed in the United States by "the Soviet defendant" was its failure to warn LOT and plaintiff's decedents that the aircraft and its engines were defective and unairworthy. Having reviewed the legislative history, Judge Nickerson concluded that a failure to warn was insufficient to constitute an "act" falling within the statute. The district court did not, however, address plaintiff's allegations of negligent maintenance and service conducted in the United States.
 
 
 35
 Accordingly the district court dismissed the complaint against the USSR on the ground of sovereign immunity from suit. In doing so, the district court said nothing about plaintiff's interrogatories, which the magistrate had directed the USSR to answer, nor did it address the sufficiency of process.
 
 
 36
 This appeal followed.
 
 Discussion
 
 37
 The FSIA confers federal personal and subject matter jurisdiction over (1) a foreign state that has been (2) served with lawful process and (3) whose commercial activity has a nexus with the United States and plaintiff's cause of action sufficient to constitute an exception to foreign sovereign immunity. See 28 U.S.C. Secs. 1330, 1603, 1605(a)(2), 1608 (1988).
 
 
 38
 The district court addressed only the third element, assuming the existence of the first and saying nothing about the second. In some circumstances it is appropriate to base a decision on a dispositive issue and not reach others. In this case, we think the district court should have begun not with the commercial element but rather with the other elements, for the latter, not the former, are more likely to be dispositive.
 
 
 39
 Plaintiff first contends that her complaint should not have been dismissed without giving her an opportunity to obtain discovery. The USSR contends, on the other hand, that if the court lacks jurisdiction over it, it cannot be subjected to discovery. The answer is that generally a plaintiff may be allowed limited discovery with respect to the jurisdictional issue; but until she has shown a reasonable basis for assuming jurisdiction, she is not entitled to any other discovery. See, e.g., Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 & n. 13, 98 S.Ct. 2380, 2389 & n. 13, 57 L.Ed.2d 253 (1978). That principle will govern proceedings in the district court on remand.
 
 
 40
 As to the application of section 1605(a)(2) in this case, we agree with Judge Nickerson that a failure to warn does not constitute an "act performed in the United States in connection with a commercial activity of the foreign state elsewhere" as required by the second commercial activity exemption in the statute. See 716 F.Supp. 86-87. However, it cannot be determined on the present record whether plaintiff's action is "based upon a commercial activity carried on in the United States" by one of the Soviet defendants as required by the first commercial activity exemption in section 1605(a)(2).
 
 
 41
 A fair reading of plaintiff's complaint contains allegations that a Soviet entity or entities inspected, overhauled and serviced the fatal aircraft and its engines in the United States prior to the crash.[4] Plaintiff's interrogatories sought to explore that issue. If a Soviet entity negligently overhauled or serviced this aircraft or its engines in the United States and that negligence caused or contributed to the crash, jurisdiction would lie under section 1605(a)(2), assuming that the Soviet entity was the state or its instrumentality. See Barkanic v. General Admin. of Civil Aviation of the People's Republic of China, 822 F.2d 11 (2d Cir.), cert. denied, 484 U.S. 964, 108 S.Ct. 453, 98 L.Ed.2d 393 (1987). Plaintiff's inquiries in that vein are not wholly fanciful. In a Wall Street Journal advertisement, Aviaexport USSR offered a "complete service package" including "machines and units for aircraft servicing in airports," "after-sales service" and "maintenance and repairs of aircraft and equipment." Plaintiff is entitled to have these interrogatories regarding defendants' possible commercial activities in the United States answered, if she can satisfy the first two elements of jurisdiction.
 
 
 42
 We condition plaintiff's entitlement to discovery on satisfaction of the first two elements of FSIA jurisdiction because such jurisdiction clearly would be lacking were the actor not a foreign state or had the defendants not been properly served.
 
 
 43
 On remand the district court must resolve these issues. The legality of the service of process obtained by plaintiff must be evaluated in the light of the diplomatic exchange of notes. As for state action, plaintiff's theory appears to be that the Ilyushin Design Bureau may have serviced the aircraft in the United States and the Soloviev Design Bureau done the same with the engines. The USSR argued to the district court on the basis of the Kuleshov affidavit that these entities are separate judicial entitles. See First National City Bank v. Banco Para El Commercio Exterior de Cuba (Bancec), 462 U.S. 611, 626-27, 103 S.Ct. 2591, 2599-2600, 77 L.Ed.2d 46 (1983) ("[G]overnment instrumentalities established as juridical entitles distinct and independent from their sovereign should normally be treated as such."); see also DeLetelier v. Republic of Chile, 748 F.2d 790, 794 (2d Cir.1984), cert. denied, 471 U.S. 1125, 105 S.Ct. 2656, 86 L.Ed.2d 273 (1985) (since "[t]here was no finding that [the National Airline's] separate status was established to shield its owners from liability for their torts or that Chile ignored ordinary corporate facilities", separate status should not be ignored).
 
 
 44
 We intimate no view on either issue. We hold only that the district court must address them. In doing so, the district court may consider whether other discovery is necessary to resolve these jurisdictional questions. If plaintiff prevails on these two elements, the USSR must then answer Interrogatories 8 and 9. Proceeding in this manner will permit fully informed evaluation of the district court's jurisdiction, both subject matter and personal.
 
 Conclusion
 
 45
 The district court's order dismissing the complaint against the USSR is reversed and the case remanded for further proceedings consistent with this Opinion.
 
 
 
 *
 Honorable Charles S. Haight, Jr. United States District Judge for the Southern District of New York, sitting by designation
 
 
 [1]
 Section 1603(b) provides:
 An "agency or instrumentality of a foreign state" means an entity--
 (1) which is a separate legal person, corporate or otherwise, and
 (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and
 (3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (d) of this title, nor created under the laws of any third country.
 
 
 [2]
 Section 1605(a)(2) provides in pertinent part:
 (a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case--
 (2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; ...
 
 
 [3]
 Section 1608(a) provides for service "upon a foreign state or political subdivision of a foreign state" by (1) delivery of the summons and complaint "in accordance with any special arrangement" between the parties, or (2) in accordance with any "applicable international convention on service of judicial documents." Sec. 1608(a)(3) and (4) provide:
 (3) If service cannot be made under paragraphs (1) or (2), by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned, or
 (4) if service cannot be made within 30 days under paragraph (3), by sending two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services--and the Secretary shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted.
 
 
 [4]
 Despite a statement by appellant's counsel in one letter arguably to the effect that the only negligent conduct of the Soviet defendants occurred within the Soviet Union, appellant has not "waived" the claim presented in the complaint that the alleged negligent servicing and maintenance by the Soviet defendants occurred in the United States