McKESSON CORPORATION,
et al., Plaintiffs,

v.

The ISLAMIC REPUBLIC OF
IRAN, et al., Defendants.

Civ. A. No. 82–0220 (TAF) (PJA).

United States District Court,
District of Columbia.

July 5, 1991.

See also 759 F.Supp. 855.

Mark R. Joelson, Mark N. Bravin, Morgan, Lewis & Bockius, Washington, D.C., for plaintiffs.

Thomas G. Corcoran, Jr., Berliner, Corcoran & Rowe, Washington, D.C., for defendants.

## MEMORANDUM OPINION

PATRICK J. ATTRIDGE, United States Magistrate Judge.

This matter is before the court on the plaintiffs' motion to compel discovery and motion to modify a discovery ruling. For the reasons below, the plaintiffs' motion to compel is granted in part and the motion to modify is denied.

### I. *Background*

The plaintiffs in this action allege that the Islamic Republic of Iran, through certain agencies and instrumentalities, "froze" the plaintiffs from their financial interest in an Iranian dairy corporation, the Sherkat Sahami Labaniat Pasteurize Pak ("Pak Dairy"). The plaintiffs filed suit in this District Court on January 22, 1982 and this case was stayed while the plaintiffs pur-

sued their claims in the Iran–United States Claims Tribunal pursuant to the Algiers Accords of January 19, 1981.[1] The Claims Tribunal ruled favorably, in part, for the plaintiffs. *See Foremost Tehran, Inc. v. Islamic Republic of Iran,* 10 Iran–United States Claims Trib.Rept. 228 (April 10, 1986). After judgment was entered, the plaintiffs resuscitated the stayed District Court action, apparently to seek additional damages not awarded by the Claims Tribunal.

Soon after the action was revived, the defendant moved for dismissal on the basis that the court lacked jurisdiction under Foreign Sovereign Immunity Act, 28 U.S.C. § 1602 *et seq.* (1976) ("FSIA"). This motion was denied. *See Foremost–McKesson, Inc. v. Islamic Republic of Iran,* Civ. Action No. 82–0220, 1989 WL 44086 (D.D.C. April 18, 1989). The matter was then accepted on interlocutory appeal by the Court of Appeals for the District of Columbia. The Court of Appeals agreed with the District Court that Iran was subject to suit by virtue of the "commercial activity" exception embodied in § 1605(a)(2) of the FSIA;[2] however, the Court remanded this case for "more extensive preliminary findings regarding the nature and degree of control exerted by Iran" over those instrumentalities which the plaintiffs allege caused their injury. *Foremost–McKesson, Inc. v. Islamic Republic of Iran,* 905 F.2d 438 (D.C.Cir.1990).

The plaintiffs now seek discovery that goes to this issue. Th defendant has refused to respond to any of the plaintiffs' initial requests for discovery, and this refusal has resulted in the plaintiffs' motion to compel now before the court. In an effort to facilitate a speedy resolution of this matter, an oral hearing was held on May 9, 1991 at which this court directed the plaintiffs to narrow their discovery requests. The plaintiffs promptly complied with the court's directive; the defendant however still refuses to respond to the amended requests.

## II. *Applicable Law*

■ Before subject-matter jurisdiction will lie under the FSIA, the court must find that a principal-agency relationship exists between the sovereign and the instrumentality. *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba,* 462 U.S. 611, 626, 103 S.Ct. 2591, 2599, 77 L.Ed.2d 46 (1983) (*"Bancec"*). Under the FSIA, there is a presumption that an instrumentality is separate and independent from the foreign sovereign for jurisdictional purposes. *Banco,* 462 U.S. at 633, 103 S.Ct. at 2603, *Hester Int'l Corp. v. Federal Republic of Nigeria,* 879 F.2d 170, 176 (5th Cir.1989). The plaintiffs have the burden "of asserting facts sufficient to withstand a motion to dismiss regarding the agency relationship," *Foremost–McKesson,* 905 F.2d at 447, and the plaintiffs may not rely on conclusory allegations that would establish an agency relationship. Rather, there must be explicit findings of fact on the issue.

■ Clearly then, the plaintiffs face a fairly heavy burden of production in establishing subject-matter jurisdiction in this regard. Consequently, in order to meet this burden, resort to limited discovery concerning jurisdictional issues must be available. *See, e.g. Filus v. Lot Polish Airlines,* 907 F.2d 1328, 1332 (2nd Cir.1990), *citing Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978) (stating that "generally, a plaintiff may be allowed limited discovery with respect to the jurisdiction issue" under the FSIA).[3] Moreover, the

---

1. Declaration of the Government of the Democratic and Popular Republic of Algeria, 20 Internat'l Law Materials 224 (1981).

2. The FSIA states in pertinent part that a foreign sovereign will not be immune from suit "in which the action is based upon a commercial activity carried on in the United States ... or upon an act outside the territory of the United States in connection with a commercial activity

of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2).

3. The FSIA itself does not attempt to proscribe international discovery procedures, but instead, directs the courts to refer to domestic law in implementing the discovery process. *See* JUDICIARY COMMITTEE REPORT ON FOREIGN SOVEREIGN IMMUNITIES ACT OF 1976,

Court of Appeals expressly directed that in this case, further fact-finding must be accomplished. *Foremost–McKesson,* 905 F.2d at 440.[4] However, the Court of Appeals also cautioned that such fact-finding should limited as to "avoid frustrating the significance and benefit of immunity from suit." *Id.* at 449 (citations omitted). Accordingly, this court must now structure discovery concerning jurisdictional issues so as to ensure that the plaintiffs receive fair and adequate discovery without inappropriately impinging upon the sovereign interests of the defendant Iran.

■ *Societe Nationale Industrielle Aerospatiale v. United States District Court,* 482 U.S. 522, 107 S.Ct. 2542, 96 L.Ed.2d 461 (1987) offers considerable guidance in formulating the parameters of discovery in suits against foreign governments. *Aerospatiale* held that the Federal Rules of Civil Procedure was the appropriate vehicle for discovery in suits involving foreign parties or property. However, the Supreme Court cautioned that utilization of the Rules must be subject to "prior scrutiny in each case of the particular facts [and] sovereign interests." *Id.* at 556, 107 S.Ct. at 2562. In light of the special problems posed by discovery abroad, district courts should ensure that a foreign litigant is not subject to unfair or abusive discovery. *Id.*[5]

As additional instruction in formulating appropriate discovery, the Court in *Aerospatiale* refers to the guidelines set out in a draft of what is now Restatement Third, Foreign Relations Law of the United

States, § 442 (1987). § 442(c) states in pertinent part:

> [I]n framing [a discovery] order, a court ... should take into account the importance to the ... litigation of the documents or other information requested; the degree of specificity of the request; ... the availability of alternative means of securing the information and the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.

Additionally, comments to § 442 suggests that "it is ordinarily reasonable to limit foreign discovery to information necessary to the action—typically, evidence not otherwise readily obtainable—and directly relevant and material." Comment (a) at 350. Although § 442 does not distinguish between discovery requests addressed to private foreign litigants and requests addressed to foreign governments, any consideration unique to Iran in this instance can be adequately accommodated by determining whether "compliance with the request would undermine important interests of the state where the information is located" as instructed by § 442.

### III. *Plaintiffs' Discovery Requests*

■ Bolstered by the instructions provided by the Supreme Court, the court now turns to the specific discovery requests put forth to Iran. As stated previously, the

---

H.REP. NO. 94–1487 at 23, 94th Cong., 2nd Sess., *reprinted in* 1976 U.S.CODE CONG. & ADMIN.NEWS 6621–6622 (1976).

**4.** Of course, the plaintiffs might not be entitled to further discovery if there was "no conceivable basis for jurisdiction." *International Terminal Operating Co. v. Skibs A/S Hidlefjord,* 63 F.R.D. 85, 87 (S.D.N.Y.1973). However, that is most certainly not the case here as the issue of whether the co-defendants named by the plaintiff were in fact "instrumentalities" of Iran for jurisdictional purposes was vigorously litigated before the Claims Tribunal, with the plaintiffs prevailing on this issue. *Foremost Tehran, Inc. v. Islamic Republic of Iran,* 10 Iran–United States Claims Trib.Rept. 228 (April 10, 1986). Although admittedly the Claims Tribunal in deciding this issue utilized a lower standard than

that contained in the FSIA, *see Foremost–McKesson,* 905 F.2d at 448, the Claims Tribunal's determination nonetheless is adequate to entitle plaintiff to additional discovery on the issue.

**5.** The Supreme Court also directs a court to consider if application of the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, March 18, 1970, 23 U.S.T. 2555, T.I.A.S. No. 74444, might prove a more effective tool in obtaining discovery located abroad. *Aerospatiale,* 482 U.S. at 556, 107 S.Ct. at 2562. However, the defendant in this action has not contended that procedure contained in the Hague Evidence Convention is a more appropriate vehicle for conducting discovery. Rather, the defendant's position seems to be simply that *no* discovery is appropriate.

court directed the parties in the May 9, 1991 hearing to pare down their discovery requests. The plaintiffs have now re-submitted seven narrowly-drafted interrogatories and six requests for production of documents designed to procure solely that information tending to establish subject-matter jurisdiction. The discovery requests as drafted clearly are of the sort allowed under the Federal Rules of Civil Procedure; however, the court will further scrutinize these requests to safeguard against any encroachment upon important sovereign interests of the defendant.

As a preliminary matter, the court stated during the May 9 hearing that the defendant need respond to any generalized discovery request only insofar as information concerning written communications or documents is sought. Although both oral and written communications concerning actions which would constitute control of the various co-defendant entities may certainly be of considerable import to the matter at hand, the court will not compel a foreign government to canvass its officials during preliminary stages of discovery in search of oral communications made over ten years ago. Such a request would be unduly burdensome and intrusive. Therefore, the plaintiffs' requests for discovery shall be limited to written communications and documents only.[6]

In addition, the plaintiffs have asked the court to modify its oral ruling of May 9, 1991 that discovery could be sought for information generated between 1979 and the filing of the plaintiffs' complaint on January 22, 1982. Although the plaintiffs agree that 1982 is an appropriate cut-off year for discovery requests, they object to the January 22 date. The plaintiffs give no reason in their motion as to why the January 22 date is unacceptable, but in their reply they aver that the date precludes production "as to much of the period when one would expect documents to have been generated illustrating the degree of Iran's control over the co-defendant entities." Plaintiffs' Reply at 3. The court does not agree. For jurisdictional purposes, the plaintiffs must show that Iran exercised a sufficient degree of control over the co-defendant instrumentalities at the time the complaint was filed. And, contrary to the plaintiffs' blanket assertion, one would most naturally expect that documents tending to establish jurisdiction prior to the filing of the complaint would be generated prior to this event also.[7] Therefore, documents generated *after* the filing of the complaint are irrelevant for the purpose of establishing jurisdiction, and the court is reluctant to compel Iran to produce additional discovery beyond the time frame germane to this issue. Accordingly, the plaintiffs' motion to modify is denied and the defendant shall not be required to respond to the plaintiffs' discovery requests insofar as they may seek information generated after the complaint was filed.

In the plaintiffs' Amended First Request for Production of Documents, Document Requests Nos. 2 and 3, the plaintiffs seek certain documents "within the possession, custody or control of Iran (a) pursuant to requirements of law of Iran, including, but not limited to, the Commercial Code or taxation laws, or (b) otherwise." Plaintiffs' Amended Request at 5–6. The defendant refuses to respond to this request in its entirety and asks that the Court rule that Iran need produce documents only within its actual possession. Defendant's Response at 2. The court agrees that the

---

6. A request seeking information concerning an oral communication of which the exact date and participants is known might possess the required specificity under § 442 of the Restatement. Therefore, Iran's response could conceivably be warranted in such a situation. The plaintiff, however, has given no indication that they possess any information with which to frame such a request.

7. The court would like to emphasize that this time frame is to control the plaintiffs' somewhat generalized discovery requests. The court concedes that it would be faced with a different situation had the plaintiffs requested a specific document generated after January 22, 1982 they knew to exist which simply memorialized concrete actions by the defendant taken prior to the filing of the complaint. Because the plaintiffs' request then would be highly specific and particularized, the burden upon Iran to respond to this request might be substantially lessened, warranting its production.

Islamic Republic of Iran should only be compelled to produce documents within its possession or custody. Accordingly, the defendant must respond to the plaintiffs' requests Nos. 2 and 3 only insofar as they seek documents within the possession or custody of the Iranian Government "pursuant to the requirements of the law of Iran."

The plaintiffs also seek production of Iranian "proclamations, directives, laws, [and] decrees,...." that would affect the Pak Dairy. Plaintiffs' Amended Requests Nos. 4 and 5. Comment (a) to § 442 suggests that discovery not be ordered for information "readily obtainable" through other sources. Normally, this type of information would be compiled in Iranian legal treatises and publications. Therefore, to the extent that Document Requests Nos. 4 and 5 seek documents that are a matter of public record within Iran, Iran should not be forced to produce, in essence, legal research for the plaintiffs.

Lastly, the plaintiffs request written documents to or from the Iranian Government from or to the co-defendant entities concerning Pak Dairy. Plaintiffs' Amended Request No. 6 at 7. The defendant quite summarily states that this request is burdensome, but fails to give any supporting rationale for his opinion. Without question, these documents are directly relevant to establishing the degree of control exercised by Iran over the co-defendant entities. The defendant does not claim that these documents can be obtained from another source, nor does he explain why this request is so burdensome as to offend a sovereign interest of Iran. On the contrary, the defendant concedes that the burden to produce discovery placed on Iran "has already [been] reduced ... by a very substantial amount." Defendant's Opposition to the Plaintiffs' Motion to Modify at 4. Without more specific objections, the defendant shall be required to produce all documents responsive to Request No. 6 which were generated between 1979 and

January 22, 1982 and that are in the possession or custody of the Iranian government.

For the most part, plaintiffs' amended interrogatories mirror their requests for production of documents. To the extent that any interrogatory seeks a description of documents that have been or will be produced in response to the plaintiffs' request for documents, the defendant need not respond. In addition, the plaintiffs' request for a description of written documents not already produced in response to document requests shall be limited to those written documents generated between January 1, 1979 until the time the complaint was filed.[8]

Interrogatories Nos. 3 and 4 duplicate in large part the plaintiffs' Amended Requests for Documents Nos. 4 and 5. As stated before, Comment (a) to § 442 suggests that discovery not be ordered for information "readily obtainable" through other sources. Normally, this type of information would be compiled in Iranian legal treatises and publications. Therefore, to the extent that Interrogatories Nos. 3 and 4 seek descriptions of documents that are a matter of public record within Iran, Iran need not respond. However, both interrogatories ask for a description of "written communications" issued by Iran relating Pak Dairy, which normally would not be of the sort compiled in treatises and the like. Therefore, to the extent that responsive documents generated in the applicable time frame have not already been provided, the defendant should respond to Interrogatories Nos. 3 and 4 insofar as it seeks information concerning "written communications."

Plaintiffs' amended interrogatory No. 5 asks for the names of persons who served on the governing boards of the Subject Iranian Organizations of Pak Dairy during the applicable time frame and their positions and date of tenure. Amended Request at 8. The interrogatory then goes on

---

8. This limiting instruction then addresses all specific objections raised to Interrogatories Nos. 1 and 2. *See* Defendant's Objections to Plaintiffs' Amended First Set of Interrogatories at 5 (filed 5/30/91). Therefore, the defendant shall respond to these interrogatories as limited by this Order.

to ask if any of these people have held a government position with Islamic Republic of Iran. The defendant objects to this interrogatory only insofar as there is no time limitation with respect to second sub-part. Objections at 6. The defendant gives no basis for this objection, however; nor is there any indication that this request is burdensome in any way or that the requested information could be obtained through other sources. Therefore, the court will order Iran to respond in the absence of any rationally-supported objection.

Interrogatory No. 6 seeks names of government agencies and officials who sought to "control" the co-defendant entities and how they exercised this "control." Amended Interrogatories at 9. If the defendant resorts to the common usage of term "control" in attempting to respond to this interrogatory, the request becomes much too ambiguous. Hence, the interrogatory lacks the specificity required by § 442 of the Restatement, and the court will not require a response. Alternatively, the term "control" is also a legal term of art in the context of establishing jurisdiction. If the plaintiffs intend this definition to be utilized, assumably the information sought through Interrogatory No. 6 should also be or have been produced in response to the plaintiffs' remaining interrogatories and requests for documents. The court will not require a foreign government to "re-respond" to duplicative discovery requests merely to ensure that the plaintiffs have not overlooked anything. *Aerospatiale* and § 442 of the Restatement demand that the plaintiffs solicit discovery through particularized requests, and not rely on the sort of "catch-all" interrogatories such as the one here. Accordingly, the plaintiffs' Interrogatory No. 6 is stricken in its entirety.

Finally, the plaintiffs in Interrogatory No. 7 want to know if Iran has ever addressed the issue of "control" (assumably of the type necessary in this particular forum to establish jurisdiction) in "courts of law or equity" or other formal proceedings. The court struggles to see how the issue of "control" as decided in potentially a myriad of factual scenarios under a variety of legal theories meets the level of specificity required of discovery requests to foreign governments. Moreover, this information can be easily obtained through other sources—most readily from the records of the forum itself. Therefore, the Iranian government need not respond to this interrogatory.

### IV. *Conclusion*

For the reasons stated above, the plaintiffs' motion to compel is denied in part and granted in part. In addition, the plaintiffs' motion to modify ruling is denied.