Danuta Imiolek FILUS, as Administratrix of the Estate of Kazimerz Jan Filus, Deceased, Plaintiff,

and

Danuta Imiolek Filus, as Administratrix of the Estate of Joanna Marianna Filus, Deceased, Plaintiff,

v.

LOT POLISH AIRLINES, a/k/a Polskie Linie Lotnicze; and Union of Soviet Socialist Republics, by its Ministry of Civil Aviation, Ilyushin Design Bureau, and Soloviev Design Bureau, Defendants.

No. 87 CV 4252.

United States District Court, E.D. New York.

April 23, 1993.

Kreindler & Kreindler, New York City (Lori B. Lasson, of counsel), for plaintiff.

Wolf, Popper, Ross, Wolf & Jones, New York City (Michael P. Fuchs, of counsel), for defendant U.S.S.R.

Condon & Forsyth, New York City, for defendant LOT Polish Airlines.

## MEMORANDUM AND ORDER

NICKERSON, District Judge:

Plaintiff brought this action as the administratrix of the estates of her husband and daughter, passengers killed in a 1987 crash of an Ilyushin–62M jet airplane near Warsaw, Poland. According to the complaint filed in 1987, the jet was operated by defendant LOT Polish Airlines (LOT) and manufactured and sold to it by the defendant Union of Soviet Socialist Republics (USSR), by its Ministry of Civil Aviation (the Ministry), Ilyushin Design Bureau (Ilyushin Bureau) and Soloviev Design Bureau (Soloviev Bureau), collectively referred to in the complaint as "the Soviet defendant."

Since the filing of the complaint and the issuance of opinions and orders by this court

and the Court of Appeals, *In Re Air Crash Disaster Near Warsaw, Poland,* 716 F.Supp. 84 (E.D.N.Y. 1989), reversed and remanded, *Filus v. LOT Polish Airlines,* 907 F.2d 1328 (2d Cir.1990), the USSR has dissolved as a governmental entity.

The court has before it plaintiff's motion for default judgment against the USSR, and a cross-motion to reargue and reconsider an order of this court dated July 2, 1992, upholding Magistrate Judge John L. Caden's report and recommendation that the USSR comply with certain discovery requests.

### I.

The complaint alleges, in substance, the following.

LOT is an agency of or legal person owned by the Polish People's Republic. The USSR was a foreign state and the Ministry, Ilyushin Bureau, and Soloviev Bureau were all agencies or instrumentalities or legal persons or subdivisions of or owned by the USSR.

On May 9, 1987 LOT operated an Ilyushin aircraft on a flight from Warsaw, Poland, destined for John F. Kennedy International Airport in New York. The USSR by its Ministry and Ilyushin Bureau and Soloviev Bureau designed, manufactured, inspected, overhauled, and serviced the "subject aircraft" and its four engines and sold it to LOT with instructions as to operating, servicing and overhauling the aircraft and the engines.

The USSR was engaged in substantial commercial activities in New York, including "the servicing of said Ilyushin aircraft and engines."

On May 9, 1987 the aircraft crashed soon after taking off from Warsaw, causing injury and death to plaintiff's two decedents. LOT was negligent and committed willful misconduct in various ways, and the USSR was negligent and committed willful misconduct in designing, manufacturing, inspecting, and servicing the aircraft and the engines and in failing to warn plaintiff's decedents that they were defective.

On April 8, 1988, after the USSR had not moved or answered within sixty days after service allegedly made pursuant to the Foreign Sovereign Immunities Act (the Act), 28 U.S.C. § 1608(a), (d), plaintiff moved under § 1608(e) of the Act for a default judgment "against the Soviet defendant."

Counsel for the USSR then appeared on April 28, 1988 solely for the purpose of challenging the sufficiency of service of process and asserting the sovereign immunity of the USSR and the Ministry and moved for dismissal under the Act. Counsel did not appear for Ilyushin Bureau or Soloviev Bureau.

When plaintiff served interrogatories relating to the dismissal, the USSR objected, and this court referred the matter to Magistrate Judge Caden, who overruled the objections. On the USSR's appeal, this court by order dated June 26, 1989 granted the motion to dismiss the complaint for lack of subject matter jurisdiction. 716 F.Supp. at 87.

This court, under the impression that the law still required it as "threshold matter" to address first the question of subject matter jurisdiction, *see Duke Power Co. v. Carolina Environmental Study Group,* 438 U.S. 59, 68, 98 S.Ct. 2620, 2628, 57 L.Ed.2d 595 (1978), turned to that issue. The relevant statutory language of the Act, 28 U.S.C. § 1605(a)(2), provides that a foreign state "shall not be immune" from the jurisdiction of this court in any case in which the action is based upon (a) "a commercial activity carried on in the United States by the foreign state" or (b) an act "performed in the United States" in connection with a commercial activity elsewhere.

Because the parties appeared to be in agreement that at least the USSR was a "foreign state" as defined in 28 U.S.C. § 1603, the court assumed that to be the case and considered the above two alternative bases in § 1605(a)(2) for subject matter jurisdiction. This court did not think it had power to decide whether it had personal jurisdiction without first finding subject matter jurisdiction and thus did not examine the question of whether the USSR had been served with lawful process.

Plaintiff's argument with respect to the first clause of § 1605(a)(2) was that the "action" was "based upon a commercial activity carried on in the United States" because Aeroflot, the airline of the USSR, made regu-

lar flights between Moscow and the United States and because an advertisement placed in the Wall Street Journal by "Aviaexport USSR" (Aviaexport), a USSR instrumentality, recited that it supplied and serviced aircraft and engines.

Nowhere in the papers submitted on the motion did plaintiff suggest that the USSR or Aeroflot or Aviaexport had serviced or overhauled the subject aircraft in the United States. Indeed, counsel for plaintiff stated in a letter dated August 19, 1988 that "[i]t is true that defendant USSR's negligence occurred in that country."

Moreover, although plaintiff's interrogatories inquired as to who overhauled and serviced the aircraft and engines and when, no interrogatory asked "where" such work was done. This court therefore accepted the representation by plaintiff's counsel that the only negligence of the USSR alleged by plaintiff took place in that country.

This court held that the business conducted here, by Aeroflot and the Wall Street Journal advertisement, was not activity on which the action was "based." 716 F.Supp. at 86. *See also Barkanic v. General Admin. of Civil Aviation of People's Republic of China,* 822 F.2d 11, 13 (2d Cir.), *cert. denied,* 484 U.S. 964, 108 S.Ct. 453, 98 L.Ed.2d 393 (1987).

This court also rejected plaintiff's argument that the alleged failure to warn that the aircraft and its engines were defective was "an act performed in the United States in connection with a commercial activity" of the USSR "elsewhere." 716 F.Supp. at 86–87.

This court accordingly dismissed the complaint for lack of subject matter jurisdiction. 716 F.Supp. at 87.

The Court of Appeals for the Second Circuit reversed and remanded. 907 F.2d at 1333–34. It held that this court "should have begun" with the "elements" of (a) whether the USSR and its Ministry constituted a "foreign state," and (b) whether it had been "served with lawful process," because these issues were "more likely to be dispositive." 907 F.2d at 1332.

The Court of Appeals agreed with this court that a failure to warn was not an "act performed in the United States" within the meaning of the first clause of § 1605(a)(2). 907 F.2d at 1333. But the Court of Appeals held that it was improper for this court to dismiss on the ground that the action was not "based on a commercial activity carried on in the United States." 907 F.2d at 1333.

The Court of Appeals construed the complaint to allege that a Soviet entity inspected, overhauled, and serviced the aircraft and the engines "in the United States," and said that counsel's letter stating that "the USSR's negligence occurred in that country" did not constitute a waiver of a claim alleging negligence in the United States. The court also construed plaintiff's interrogatories to be seeking information as to the USSR's servicing of the aircraft and engines "in the United States." 907 F.2d at 1333.

In remanding the Court of Appeals conditioned plaintiff's entitlement to discovery on satisfaction of the "elements" of whether a "foreign state" had been "served with lawful process." 907 F.2d at 1333.

On March 27, 1991 the USSR answered on behalf of itself and the Ministry. To date Ilyushin Bureau and Soloviev Bureau have not answered.

On April 25, 1991, Magistrate Judge Caden directed the USSR to answer all of plaintiff's interrogatories. In July 1991 the USSR submitted answers verified by Yevgeny S. Antipov, then Counselor of the Embassy of the USSR in the United States. Those answers, in substance, stated the following.

(a) The USSR owns the majority ownership interest of Soloviev Bureau and it is thus an "agency or instrumentality" of the USSR within the meaning of § 1603 of the Act, defining a "foreign state," and is "a separate legal person acting pursuant to its articles of association."

(b) Ilyushin Bureau is not an instrumentality of the USSR and not a separate entity but is "a constituent part, as an experimental and design office" of Strela, a separate legal person acting pursuant to its articles of association.

(c) At no time has an official or employee of the USSR supervised, consulted, provided

any services to or held any title in Ilyushin Bureau or Soloviev Bureau, and the USSR Ministry of Civil Aviation does not direct, regulate or have any control of either of them.

(d) The engines in question were designed by Soloviev Bureau in 1972, manufactured and assembled by the Rybinsk Production Association of Engine Manufacture in 1981, and sold with the aircraft by Aviaexport to Pezetel, a Polish entity, and delivered on July 21, 1983. The engines were not inspected before the sale, not overhauled and not serviced by the USSR, which did not issue an airworthy certificate or equivalent. The USSR "assumes" that any necessary inspection, overhaul, services and issuance of airworthy certificates were done by Polish authorities.

(e) The aircraft was designed by Ilyushin Bureau in 1974, manufactured by the Kazan Aviation Production Association "in 1984," sold by Aviaexport to Pezetel, and delivered on "July 21, 1983." It was not inspected before the sale, was not overhauled or serviced by the USSR, which did not issue an airworthiness certificate or equivalent. The USSR "assumes" that any necessary inspection, overhaul, service and issuance of airworthy certificates were done by the appropriate Polish authorities.

(f) Except for the sale to Pezetel of the aircraft ultimately utilized by LOT there was no relationship between the USSR (or any of its ministries, bureaus, agencies, instrumentalities, organs or political subdivisions) and LOT.

(g) Aeroflot, an independent aviation enterprise subordinated to the Ministry of Civil Aviation of the USSR and a separate legal person, operates international and internal air routes. It is not responsible for the obligations of the State, and the State is not responsible for the obligations of Aeroflot. It does not manufacture, design or develop aircraft or aircraft engines, or take any part in the manufacture, design, improvement, servicing, operation or sale of the aircraft and engines at issue.

(h) The Ministry of Civil Aviation, an organ of the USSR, implements guidance over the branch of industry (enterprises and organizations subordinate to it), bears responsibility for State management of the branch of industry, is a member of the USSR's Cabinet of the Ministers, and is a constituent part of the Soviet State.

After receipt of these answers, plaintiff noticed Antipov's deposition. The USSR objected on the ground that he had consular immunity. On August 12, 1991 Magistrate Judge Caden ruled that if Antipov had immunity, the USSR was required to produce another representative for deposition. On August 21, 1991 the USSR filed objections to the Magistrate Judge's rulings.

Meanwhile, on August 19, 1991 a coup had begun in the USSR.

At a November 1991 hearing before this court on the objections to Magistrate Judge Caden's rulings, the USSR withdrew its objections and agreed to provide a representative within 105 days.

By late December 1991 the USSR had dissolved. On January 10, 1992 the parties appeared at a status conference before this court to discuss how the dissolution of the USSR would affect the litigation. The court directed them to return in February. At a conference on February 14, 1992 the USSR sought an extension of time in which to provide a representative for deposition. The court granted it 35 days and directed the parties to appear on March 20, 1992.

On March 5, 1992 plaintiff moved for a default judgment based on the USSR's failure to comply with the Magistrate Judge's August 12, 1991 ruling but later withdrew the motion without prejudice. On March 9, 1992, anticipating a motion to dismiss by the USSR, plaintiff served seven document requests on the USSR as to the obligations assumed by the Russian Federation, which had seemingly succeeded the USSR in significant respects.

On April 24, 1992 the USSR moved to dismiss the complaint on the grounds that (a) the court lacked personal and subject matter jurisdiction because of insufficient service of process and immunity under the Act, and (b) the action had abated because the USSR no longer existed.

The USSR also objected before Magistrate Judge Caden to plaintiff's March 9, 1992 document request. On May 11, 1992 the Magistrate Judge overruled the USSR's objections and directed the USSR and/or Antipov, who was then Counselor of the Embassy in the United States of the Russian Federation, to respond. By order dated July 2, 1992 this court affirmed the Magistrate Judge's ruling and ordered the USSR to comply by July 30, 1992. On August 11, 1992 the USSR forwarded to plaintiff seven documents in Russian along with English translations.

On September 16, 1992 this court dismissed the abatement motion and any pending default motion, without prejudice to resubmit.

On September 17, 1992 plaintiff filed the present motion for default. The USSR opposed the motion and cross-moved on October 30, 1992 to modify this court's July 2, 1992 order so as to require the USSR to produce only the documents already produced and to vacate the direction to produce a Soviet representative.

## II.

In accordance with the direction of the Court of Appeals, this court addresses first the question of whether the defendants meet the definition of a "foreign state" provided in § 1603 of the Act. That section provides in pertinent part:

(a) A "foreign state" ... includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b).

(b) An "agency or instrumentality of a foreign state" means any entity—

(1) which is a separate legal person, corporate or otherwise, and

(2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and

(3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (d) of this title [28], nor created under the laws of any third country.

It is self-evident and undisputed that the USSR was a foreign state. It is also undisputed that the Ministry was a part of the USSR and as such was a foreign state.

Soloviev Bureau and Ilyushin Bureau have not appeared. But the USSR admitted in the July 1991 answers to interrogatories that Soloviev Bureau was an "agency or instrumentality" under § 1603 and thus a "foreign state." The USSR denied that Ilyushin Bureau was an instrumentality of the USSR but asserted that it was a constituent part of Strela, a separate legal person.

The answer dated May 11, 1992 in a separate case pending before this court against "Ministry of Aviation Industry, Ilyushin Design Bureau, Soloviev Design Bureau and/or Soloviev Aviation and Engine Manufacturer Company, Limited, Inc. and Kazan Aviation Plant," admitted that Strela was a factory wholly owned by the USSR and an "agency or instrumentality" within the meaning of § 1603, now owned by the Russian Federation. *Olshevsky v. Ministry of Civil Aviation, et al.,* No. 89 CV 0855(EHN) (E.D.N.Y.). In that case the defendants' answer denied that Ilyushin Bureau was a separate legal entity with the capacity to be sued, but admitted that it was a constituent part of Strela and to the extent it could be sued it should be treated as an "agency or instrumentality" of a foreign state. That answer also admitted that Soloviev Bureau was now owned by the Russian Federation. The attorneys representing the defendants in that case also represent the USSR in the present case.

This court determines that the USSR and its Ministry was a foreign state, that Soloviev Bureau was and is a foreign state and a separate entity, and that plaintiff has at least made a *prima facie* showing that Ilyushin Bureau was and still is a "constituent part" of Strela and "an agency or instrumentality of a foreign state" and therefore a "foreign state."

■ Separate legal entities must be treated distinctly from the USSR and its subdivision, the Ministry, at least for purposes of

service of process. *Cf. First National City Bank v. Banco para el Comercio Exterior de Cuba*, 462 U.S. 611, 626–27, 103 S.Ct. 2591, 2600, 77 L.Ed.2d 46 (1983). "[E]ntities distinct and independent from their sovereign should normally be treated as such." 462 U.S. at 614, 103 S.Ct. at 2593. That independent status may be overcome only where the instrumentality is "so extensively controlled" by the sovereign "that a relationship of principal and agent is created" or where necessary to avoid injustice or fraud. 462 U.S. at 629–32, 103 S.Ct. at 2601–03.

The requirement to serve Ilyushin Bureau and Soloviev Bureau separately from the USSR is made clear by the fact that the Act makes a distinction between service on a foreign state or its "political subdivision" and service on an "agency or instrumentality" of a foreign state. In the latter case notice must be given in some form to the agency or instrumentality not merely to the state. *Compare* § 1608(a) with § 1608(b).

Whether service upon the USSR and the Ministry was proper must be determined according to § 1608(a) of the Act, which provides for service "upon a foreign state or political subdivision."

In substance, that subsection provides first for delivery of the papers in accordance with any "special arrangement" between plaintiff and the putative defendant, or if there is no such arrangement, in accordance with "an applicable international convention on service of judicial documents." If service cannot be made by either of these methods, the Clerk of the Court may serve by mail (requiring a signed receipt) addressed to the head of the ministry of foreign affairs of the foreign state. If service cannot be made within 30 days by the previous method, the Clerk may serve by mail (requiring a signed receipt) addressed to the United States Secretary of State, who shall transmit the papers by diplomatic channels and send the Clerk a certified copy of the diplomatic note showing the transmission.

Neither of the first two methods were possible for plaintiff. The parties do not point to a "special arrangement" for service. Neither the USSR nor the plaintiff has cited any "applicable international convention."

In its original motion to dismiss, the USSR submitted a copy of an Exchange of Notes between it and the United States signed November 22, 1935. Plainly this exchange does not constitute an "applicable international convention" for service of judicial documents. It covers procedures for each country to honor letters rogatory issued by courts of the other country.

Moreover, as the court noted in *Richmark Corp. v. Timber Falling Consultants, Inc.*, 937 F.2d 1444, 1448 (9th Cir.1991), the legislative history of the Act makes clear that the only convention to which § 1608 refers is the Hague Convention, which the USSR does not contend is "applicable" here.

■ It is not disputed that plaintiff served the papers pursuant to the last two of the alternatives in § 1608(a). Plaintiff has submitted a letter from the United States Department of State confirming that it transmitted the documents to the United States embassy in Moscow for service pursuant to § 1608.

The USSR has previously admitted in a court in this circuit that if it had received a summons and complaint sent by the required mailing, service would be effective. *United Euram Corp. v. Union of Soviet Socialist Republics*, 461 F.Supp. 609, 613 (S.D.N.Y. 1978).

The USSR and the Ministry were therefore properly served under the Act. Whether that service is sufficient to bind the Russian Federation or any other possible successor to the USSR, is not an issue ripe for decision on the present record.

■ That service was not sufficient to give this court personal jurisdiction over Ilyushin Bureau and Soloviev Bureau. To accomplish that, plaintiff had to serve them under § 1608(b), which, as stated, provides for service on an "agency or instrumentality" of a foreign state by delivery of a copy of the summons and complaint to them in one of the three ways.

Plaintiff contends that service on Ilyushin Bureau and Soloviev Bureau was accomplished by serving Aeroflot, alleging that Aeroflot is an "agent of the Soviet defendant."

But there is no evidence that Aeroflot is an agent of either Ilyushin Bureau or Soloviev Bureau. Indeed, in support of the original motion for default plaintiff submitted an affidavit from Jakov F. Demyanenko, First Deputy Director General of Aeroflot, prepared for a separate lawsuit involving a 1980 crash of an Ilyushin 62 aircraft, stating that Aeroflot is a "separate legal entity" that does not "manufacture, design or develop aircraft or aircraft components."

Plaintiff says that the summons, complaint and notice of suit were served pursuant to § 1608(b)(3) providing, among other things, for service by the Clerk by mail requiring a signed receipt. Plaintiff says the Clerk did this on March 28, 1988, addressing the papers "to the Soviet defendant at the addresses of the Ministry of Civil Aviation, Ilyushin Design Bureau and Soloviev Design Bureau."

Neither Ilyushin Bureau nor Soloviev Bureau have appeared. The record does not show that they have signed receipts. Moreover, the "Notation of Default of the Soviet Defendant" drafted by plaintiff's attorneys and entered by the Clerk, refers to service by return receipt mail on the "Foreign Ministry of the Soviet Union." That is the only notation of default in the court file, and there is nothing in the file showing a mailing by the Clerk to Ilyushin Bureau or Soloviev Bureau.

Nevertheless this court, for purposes of the present motions, accepts the statement in the papers of plaintiff's attorneys that Ilyushin Bureau and Soloviev Bureau have been served. If necessary, the parties may take additional discovery on this issue under the supervision of the Magistrate Judge. Ilyushin Bureau may also show that service was not properly effected under § 1608(b) by overcoming plaintiff's *prima facie* showing that it is an "agency or instrumentality" within the meaning of § 1603 of the Act.

### III.

The court has resolved so far as possible on the present record the issues of whether the defendants are "foreign states" and whether they have been properly served. These are the two matters the Court of Appeals required this court to consider before turning to the element that is a prerequisite to this court's exercise of subject matter jurisdiction. That element concerns § 1605 of the Act. That section, entitled, "General exceptions to the jurisdictional immunity of a foreign state," reads in pertinent part:

> (a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—
>
> .   ..   .   .   .
>
> (2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere . . .

The Court of Appeals stated that "[i]f a Soviet entity negligently overhauled or serviced this aircraft or its engines *in the United States* and that negligence caused or contributed to the crash, jurisdiction would be under § 1605[a](2), assuming that the Soviet entity was the state or its instrumentality." 907 F.2d at 1333 (emphasis provided). In that event the action would be "based upon a commercial activity carried on in the United States."

As described above, since the decision of the Court of Appeals, the USSR answered plaintiff's interrogatories 8 and 9 asking who serviced and overhauled the aircraft and engines and when. The Court of Appeals construed these interrogatories to include a question as to where such activity took place. The answers of the USSR dated July 2, 1991 state that the aircraft was not overhauled or serviced "by the USSR," and that the USSR assumed that any necessary inspection, overhaul and service was done by appropriate Polish personnel.

These answers do not resolve, except by implication, the question of whether Ilyushin Bureau or Soloviev Bureau conducted such activity in the United States. Under the wording of the opinion of the Court of Appeals plaintiff is entitled to further discovery as to what servicing or overhauling an agency or instrumentality of the USSR did in the United States.

The Magistrate Judge should supervise such further discovery and, in accordance with the caution of the Supreme Court, "exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position." *Societe Nationale Industrielle Aerospatiale v. United States Dist. Court for S. Dist. Iowa,* 482 U.S. 522, 546, 107 S.Ct. 2542, 2557, 96 L.Ed.2d 461 (1987).

In the event that further interrogatories or, if need be, deposition testimony, elicit answers showing that the action is based upon a commercial activity carried on in the United States, the Magistrate Judge may consider additional discovery pertinent to any other issue. If those answers show that the action is not so based, the USSR may move to dismiss for lack of subject matter jurisdiction.

### IV.

The USSR asks the court to focus again on its motion for "abatement" and to dismiss the action because the USSR no longer exists. The argument includes a contention that service of process was not proper service on the later formed so-called Russian Federation or whatever other entity or entities that succeeded to all or part of the assets and liabilities of the USSR.

The issue is thus not one of the propriety of the service on the USSR but rather of the substantive liability, if any, of the Russian Federation or other successors. On the present papers the court cannot determine that complex question. *See Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co. v. Navimpex Centrala Navala,* 989 F.2d 572 (2d Cir.1993); *Kunstsammlungen Zu Weimar v. Elicofon,* 536 F.Supp. 829, 856 (E.D.N.Y.1981), *aff'd* 678 F.2d 1150 (2d Cir. 1982). The USSR's attorneys in this case have, as stated above, admitted in another case that the Russian Federation is the owner of Soloviev Bureau and of Strela, of which Ilyushin Bureau is a constituent part. But whether or to what extent the Russian Federation became responsible for the obligations of those entities is an open issue. It would not be a wise expenditure of effort to conduct further discovery on this question until after discovery has been completed on whether the action is "based upon a commercial activity carried on in the United States."

### V.

Plaintiff's motion for default is premature. Section 1608(e) of the Act states that "[n]o judgment by default shall be entered by a court of the United States ... against a foreign state, a political subdivision thereof, or an agency or instrumentality of a foreign state, unless the claimant establishes his claim or right to relief by evidence satisfactory to the court."

Plaintiff has not presented sufficient evidence to support a default judgment against any of the defendants.

Given the USSR's assertion that it reasonably understood that the parties had agreed that it need not produce Antipov or a representative until this court had addressed its objections to the July 2, 1992 order, this court declines to impose sanctions for failing to produce Antipov.

### VI.

The case is referred to Magistrate Judge Caden for further discovery consistent with this order.

Plaintiff's motion for a default judgment is denied. Defendant USSR's motion for reargument and reconsideration of this court's July 2, 1992 order is denied except to the extent indicated.

So ordered.